UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────────────
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, *et al.*,

      Plaintiffs,

  -against-

EMUNA INC., d/b/a Navar Pharmacy,

      Defendant.
─────────────────────────────────────

**MEMORANDUM & ORDER**
25-CV-3076 (NGG) (LKE)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs State Farm Mutual Automobile Insurance Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company, and State Farm Fire and Casualty Company (collectively, "State Farm") bring this declaratory judgment action challenging unpaid claims submitted by Defendant Emuna, Inc. d/b/a Navar Pharmacy ("Emuna") under New York State's No-Fault Laws.[1] (Am. Compl. (Dkt. 6) ¶¶ 1-6.) State Farm alleges that Emuna failed to comply with verification requests that it issued pursuant to those No-Fault Laws, including requests for documents and examinations under oath ("EUOs"). (*Id.*) It also seeks a judicial determination that such noncompliance renders the claims non-compensable for failing to meet a condition precedent to coverage. (*Id.* at ¶¶ 41-48.) In response, Emuna moves to compel arbitration pursuant to New York Insurance Law § 5106(b) ("Section 5106") and the Federal Arbitration Act ("FAA") 9 U.S.C. § 4, and to dismiss the Amended Complaint. (Emuna's Mem. of L. in Supp. of Mot. to Compel Arbitration and Dismiss ("Emuna's Mot.") (Dkt. 15-1) at 1.) State Farm opposes by arguing that Emuna waived its right to arbitrate by previously filing several state court collection actions concerning certain reimbursement claims. (State Farm's Mem. of L. in Opp'n ("State

---

[1] N.Y. Ins. Law §§ 5101, *et seq.*; 11 N.Y.C.R.R. §§ 65, *et seq.*

Farm's Opp'n") (Dkt. 16-1) at 7-10.) For the reasons set forth below, the court GRANTS Emuna's motion to compel arbitration and DISMISSES the action WITH PREJUDICE.

## I. PROCEDURAL HISTORY

State Farm brought this action on June 3, 2025, (Compl. (Dkt. 1)), and filed its Amended Complaint on June 10, 2025, seeking declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and N.Y. C.P.L.R. § 3001. (Am. Compl. at 2.)

On July 18, 2025, Emuna moved to compel arbitration and to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (3), and (6), the FAA, and Section 5106(b). (Emuna's Mot. at 1.) Emuna argued that disputes concerning alleged noncompliance with verification procedures fall within the mandatory arbitration provision of Section 5106(b), and that arbitration was mandatory under either New York contract law, the state No-Fault Law, or the FAA. (*Id.* at 4.)

State Farm opposed the motion on August 1, 2025. It asserted that Emuna waived arbitration by filing state court collection actions to seek payment of individual invoices that arose from the same No-Fault claims. Under *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), Emuna allegedly waived its right to arbitrate because its litigation conduct was inconsistent with its existing right to arbitrate. (State Farm's Opp'n at 7-10.)

Emuna replied on August 8, 2025. It countered that its prior civil court actions were limited to seeking payment of individual invoices, and that it did not litigate the verification or eligibility issues presented in State Farm's motion. Consequently, its actions purportedly are not "inconsistent with" arbitration under

2

*Morgan* or Second Circuit precedent. (Emuna's Reply Mem. of L. ("Emuna's Reply") (Dkt. 17) at 2-5.)[2]

## II. FACTUAL BACKGROUND

The following facts are drawn from the Amended Complaint, motion papers, and other documents properly considered on a motion to compel arbitration. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("[A] court [must] consider all relevant admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits.").[3]

Emuna, a health care provider, submitted first-party No-Fault claims to State Farm seeking reimbursement for medical services provided to individuals injured in covered automobile accidents. (Emuna's Mot. at 2-3.) State Farm thereafter issued verification requests pursuant to 11 N.Y.C.R.R. §§ 65-1.1, 3.5(b)-(c), including requests for supporting documentation and notices scheduling EUOs. (Am. Compl. ¶¶ 19-23.) State Farm alleges that Emuna failed to comply with these requests and that, under the No-Fault regulations, such noncompliance renders the claims non-compensable. (*Id.* ¶¶ 1-6.)

Before this action was filed, Emuna filed several civil court collection actions seeking payment of specific unpaid No-Fault bills from State Farm. (State Farm's Opp'n at 4.) State Farm states that these are "at issue in this declaratory judgment action," which Emuna does not contest.[4] While those actions sought reimbursement of individual invoices, State Farm does not allege

---

[2] Neither party requested a stay pending arbitration.

[3] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

[4] State Farm cites to an alleged affidavit not contained in its briefing. (*Id.*; *see also* Decl. of Louis D'Onofrio (Dkt. 16-2) ¶¶ 3-4.) However, Emuna does

3

that verification issues were raised or adjudicated in those proceedings. (*Id.*; Emuna's Reply at 5.)

## III. LEGAL STANDARDS

### A. Motion to Compel Arbitration Under the FAA

A motion to compel arbitration is evaluated under "a standard similar to that applicable for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Accordingly, the court considers pleadings, affidavits, and other admissible evidence submitted by the parties and draws all reasonable inferences in favor of the non-movant (here, State Farm). *See Nicosia*, 834 F.3d at 229 (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) and *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171-72 (2d Cir. 2011)).

A district court's role in determining the arbitrability of claims is limited to deciding (1) whether a valid agreement to arbitrate exists and (2) whether the dispute at issue falls within the scope of that agreement. *In re Am. Express Fin. Advisors Sec. Litig.* ("*American Express*"), 672 F.3d 113, 128 (2d Cir. 2011); *see Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002). "Upon finding that such an agreement exists, a federal court must compel arbitration of any dispute falling within the scope of the agreement pursuant to the terms of the agreement." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 146 (2d Cir. 2001).

#### 1. Mandatory Arbitration Under New York Insurance Law Section 5106(b)

New York's No-Fault regime is designed to ensure the prompt and fair resolution of first-party benefit disputes. Section

---

not dispute this assertion and appears to concede these invoices are related. (*See* Emuna's Reply at 5.)

5106(a), for example, requires insurers to pay claims within 30 days of receipt of proof of a claim and imposes interest for overdue payments. And 11 N.Y.C.R.R. § 65-3.2(a)-(b) directs insurers to process claims promptly, fairly, and without treating applicants as adversaries. Section 5106(b) fits within this framework. It requires insurers to provide claimants with the option to submit "any dispute involving the insurer's liability to pay first party benefits" to arbitration under simplified procedures approved by the Superintendent of Financial Services.

The New York Court of Appeals and the Second Circuit have held that arbitration of first-party benefit disputes is mandatory under the No-Fault statute. *Ryder Truck Lines, Inc. v. Maiorano*, 44 N.Y.2d 364, 369 (1978) ("Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits to binding arbitration.") (citing an earlier but nearly identical version of Section 5106(b))[5]; *see also Am. Indep. Ins. Co. v. Nova Acupuncture, P.C.*, 28 N.Y.S.3d 704, 707 (2d Dep't 2016) ("Insurance Law § 5106(b) mandates every insurer to provide a claimant with the option to arbitrate disputes concerning first-party benefits."); *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 88 (2d Cir. 2024) ("The No-Fault Act's implementing regulations further require that insurers include a '[m]andatory personal injury protection endorsement' in their liability policies providing that '[i]n the event any person making a claim for first-party benefits and the [insurer] do not agree regarding any matter relating to the

---

[5] *Compare* N.Y. Ins. L. § 675(2), L.1981, c. 340 (section renumbered by L.1984, c. 367) ("Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits . . . to arbitration."), *with* Section 5106(b) ("Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits . . . to arbitration.").

claim, such person shall have the option of submitting such disagreement to arbitration.'" (citing 11 N.Y.C.C.R.R. § 65-1.1)).

Consequently, courts in this district have determined that disputes concerning a provider's alleged failure to comply with verification procedures, including document requests and EUOs, fall squarely within Section 5106(b). *See State Farm Mut. Auto. Ins. Co. v. Eclipse Med. Imaging, P.C.*, 744 F. Supp. 3d 208, 215-16 (E.D.N.Y. 2024) (holding that disputes concerning compliance with verification obligations fall "under the No-Fault scheme's broad arbitration provision").

### 2. Waiver of the Right to Arbitrate

Waiver of the right to arbitrate is not to be lightly inferred, and any doubts must be resolved in favor of arbitration. *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995). A party waives arbitration when it acts inconsistently with an existing right to arbitrate. *Morgan*, 596 U.S. at 415. The factors to consider whether a party has waived its right are: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery." *La. Stadium & Expo. Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010); *Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th 122, 131-32 (2d Cir. 2025) (stating the same). Eschewing a "rigid formula or bright-line rule for identifying when a party has waived its right to arbitration," the Second Circuit applies these factors "to the specific context of each particular case." *La. Stadium*, 626 F.3d at 159.

For the first *Doyle* factor, delays of a year or greater can evince a desire to litigate rather than arbitrate.[6] *Contrast La. Stadium*, 626

---

[6] The parties fail to discuss the first *Doyle* factor altogether. (*See* State Farm's Opp'n at 7-10; Def.'s Reply at 2-5.) But because the court "must

F.3d at 159-160 (holding that an 11-month interval weighs towards waiving the right to arbitrate), *and Doyle*, 144 F.4th at 130-31 (also emphasizing an 11-month period from the filing of the complaint to the first discussion of arbitration in any of defendant's filings); *and Nokia Corp. v. InterDigital, Inc.*, No. 08-1642, 2008 WL 2951912, at *1-2 (2d Cir. July 31, 2008) (summary order) (finding an almost three year litigation history evincing "efforts to litigate, rather than arbitrate" claims), *with PPG Indus. v. Webster Auto Parts*, 128 F.3d 103, 108 (2d Cir. 1997) ("This five-month delay, by itself, is not enough to infer waiver of arbitration.").

For the second *Doyle* factor, courts consider pursuing merits litigation as constituting a significant amount of litigation. *See* 144 F.4th at 131-32. This includes, for example, moving to dismiss on the merits, seeking dispositive relief, or pursuing resolution of arbitrable issues in federal court, before invoking arbitration. *See id.* Indeed, "only the prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate." *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997) (citing *Kramer v. Hammond*, 943 F.2d 176, 178 (2d Cir. 1991) as an example where waiver was based in part on a party's prior litigation in an "identical suit"). Participation in limited or ministerial proceedings that do not address the substance of the arbitrable dispute does not constitute waiver. *Distajo*, 107 F.3d at 133. This includes mere collection efforts or procedural filings. *Id.*

### 3. Disposition When All Claims Are Arbitrable

When an issue must be referred to arbitration, the court "shall on application of one of the parties stay the trial of the action until

---

consider delay in conjunction with" the amount of litigation to date, it conducts its own analysis. *See PPG Indus. v. Webster Auto Parts*, 128 F.3d 103, 108 (2d Cir. 1997).

such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Where all claims are arbitrable and a stay is requested, the statute leaves no room for judicial discretion; the court must stay the action. *Katz v. Cellco P'ship*, 794 F.3d 341, 345-46 (2d Cir. 2015). However, when no stay is requested, the Second Circuit has affirmed the dismissal of a case referred to arbitration. *Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015) (summary order), *cert. denied*, 137 S. Ct. 618 (2017).

## IV. DISCUSSION

### A. Application of the FAA

The court concludes, as the parties agree, that the FAA applies to the arbitration agreement. *See Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657, 661 (2d Cir. 2005) (holding that the district court has an independent obligation to determine whether the parties have agreed to arbitrate). First, the FAA applies to the dispute at hand because an agreement to arbitrate exists. *American Express*, 672 F.3d at 128. Emuna's claims are first party claims within the meaning of Section 5106(b), giving them standing to request reimbursement from State Farm.[7] Emuna also retained the right to arbitrate through the assignment of the claims for reimbursement. *See Chatham Shipping Co. v. Fertex Steamship Corp.*, 352 F.2d 291, 294 (2d Cir. 1965) ("[A]bsent contrary expression, assignment of a contract carries with it a right to arbitration therein provided."). The parties agree that the relevant claims derive from policies that contain such clauses, including one appended

---

[7] "First party benefits" are defined as "payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle." Ins. L. § 5102(b). Emuna is seeking direct payment from State Farm after covered persons assigned Emuna their no-fault benefits. *See* 11 N.Y.C.C.R.R § 65–3.11(a).

to Plaintiff's opposition as "Exhibit 1."[8] Accordingly, the court finds that the parties entered into a valid arbitration agreement.

Second, the court finds that the dispute falls within the scope of the agreement. *American Express*, 672 F.3d at 128. State Farm seeks declaratory relief solely on the basis that Emuna failed to comply with verification requests, including document production and EUO attendance. "[T]he scope of the arbitration agreement must be resolved" by using the contract's choice of law clause. *Martinez v. Bloomberg LP*, 740 F.3d 211, 223-24 (2d Cir. 2014). As the parties have chosen New York law,[9] the court follows established interpretations of New York law under its No-Fault scheme. Disputes concerning compliance with verification obligations fall squarely within the scope of Section 5106(b) because they concern liability for first-party benefits. *Eclipse*, 744 F. Supp. 3d at 215-16. ("[T]he No-Fault scheme's broad arbitration

---

[8] (State Farm's Opp'n at 9 & n.8 ("As Emuna correctly notes, there is "[a] clause included in every relevant automobile insurance policy provides, in accordance with the No-Fault Law, that in any dispute over first party benefits the insurer shall afford the claimant an opportunity to arbitrate its claims in a New York State approved arbitral forum.")) A contract, included but not cited in Plaintiff's Opposition as Exhibit 1, appears to contain such a clause on its page 11, that "if there is a disagreement as to whether incurred charges are *medical expenses*, then the disagreement will be resolved by arbitration upon written request of the *insured* or *us*." (State Farm Car Pol. Booklet ("Exh. 1") (Dkt 16-3) at ECF p. 12.) The policy is submitted to the court by declaration of Louis D'Onofrio, who swears that this policy is "in force and applicable to the claims at issue." (D'Onofrio Decl. ¶ 5.) Thus, this clause to arbitrate medical expenses suffices to commit the parties by contract to arbitration for the disputes of verification of medical expenses. And, even if the clause did not, the court would be forced to read in such a clause by operation of the Insurance Law. (See Emuna's Mot. at 4 ("The Insurance Law further provides that if any insurer fails to offer an arbitration option in its policies, one will be supplied by default. (Ins. Law § 5103(h)).")

[9] (*See* Exh. 1 at ECF p. 32.)

provision, which allows a party to elect arbitration for issues regarding both 'liability' and 'any other matter' related to 'first party benefits' [] necessarily encompasses verification."); *Ryder Truck Lines*, 44 N.Y.2d at 369 (explaining that an earlier and substantially similar version of Section 5106 should be read as "a broad arbitration clause embracing all disputes with respect to entitlement to first-party benefits arising under the [no-fault] statute"); *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 96 (2d Cir. 2014) (ruling that Section 5106(b) "makes arbitration available for disputes stemming from reimbursement claims," and that the consensus view in the Eastern District is that "medical providers have a right to arbitrate as-yet unpaid claims").

Further, the FAA applies to the present dispute because it concerns a transaction involving interstate commerce. *See generally Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, (1995) (discussing the broad reach of the FAA to regulate interstate commerce under the Commerce Clause); *see also David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 249 (2d Cir. 1991) (citing the FAA at 9 U.S.C. §§ 1, 2). Automobile insurance policies like the one now at issue "undoubtedly affect[] interstate commerce." *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 208 (E.D.N.Y. 2013); *Gov't Emps. Ins. Co. v. Grand Med. Supply, Inc.*, No. 11-CV-5339 (BMC), 2012 WL 2577577, at *2 (E.D.N.Y. July 4, 2012) (same); *Tri-Borough NY Med.*, 120 F.4th at 88 (foreclosing the reasoning employed by some courts in this district that the No-Fault Laws were removed from the ambit of the FAA).[10]

---

[10] The Second Circuit rejected the argument that the arbitration clauses were not "privately negotiated" within the meaning of the FAA, finding instead that the crux of the argument was whether the parties were "coerced or defrauded into agreeing to arbitrate" and because "State Farm *chose* to do business in New York, [] that choice requires it to comply with New York law (including the No-Fault Act.)." 120 F.4th at 88.

10

Because the FAA applies to the parties' contract, the court must compel arbitration. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."); *see also Gabay v. Roadway Movers, Inc.*, 671 F. Supp. 3d 371, 378 (S.D.N.Y. 2023), *appeal withdrawn*, No. 23-757, 2023 WL 7298749 (2d Cir. Aug. 8, 2023).

### B. Waiver Argument

State Farm contends that even though the FAA governs Emuna's reimbursement claims, the court should not compel arbitration because Emuna waived that right by filing several state court collection actions. The court disagrees.

State Farm claims that a series of state court collection actions instituted by Emuna, both before and after State Farm commenced this action, waived Emuna's right to arbitrate by "acting inconsistently with that right." (State Farm's Opp'n at 4, 8-9. (citing *Morgan*, 596 U.S. at 412 and *Doyle*, 144 F.4th at 130).) While the court agrees with State Farm that *Morgan* and *Doyle* control this dispute, the court determines that Emuna has not waived its right to arbitrate.

First, Emuna did not wait to request arbitration. Second, the litigations before this court and in state court did not reach advanced stages, nor do they constitute "prior litigation of the same legal and factual issues" that would lead a court to find that Emuna "act[ed] inconsistently" with its right to arbitrate. *Doyle*, 144 F.4th at 127; *Distajo*, 107 F.3d at 133. Based on the limited record before this court, the claims in state court appear to be simple collection actions at the early stages of litigation. They also appear to litigate different factual and legal issues than the

11

verification claim that lies at the base of this federal lawsuit. Accordingly, bringing those distinct claims does not constitute waiver of Emuna's right to arbitrate.

### 1. The first *Doyle* factor

The timing of Emuna's motion to compel arbitration in the federal case evinces a desire to arbitrate. State Farm filed its complaint on June 3, 2025, and in response, Emuna first notified the court of its intention to compel arbitration on July 2, 2025. (Compl.; Emuna's Letter to the Court dated 7/2/2025 (Dkt. 14).) This one-month period is significantly shorter than the 11-month delays in *La. Stadium*, 626 F.3d at 159-160 and *Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th at 130-31. And it is even shorter still than the five-month period which was not enough to infer an intent to waive arbitration in *PPG Indus.*, 128 F.3d at 108. Thus, the first *Doyle* factor weighs against waiver.

### 2. The second *Doyle* factor

Emuna does not allege that the state court actions are substantive litigation. Under *Doyle*, courts still consider the amount of litigation conduct to date, including pursuing merits litigation, the amount of discovery undertaken, and making dispositive motions before invoking arbitration. 144 F.4th at 126, 129-30.

Courts can only find waiver after a party "has rais[ed] a number of substantive issues . . . [and] exhausted [its] pretrial maneuvers" and "retreat[ed] to [the] contractual right to arbitration." *Kramer*, 943 F.2d at 180. Similarly, in *Leadertex*, the Second Circuit explained that a party had waived its right to arbitration by submitting and amending several pleadings, engaging in an "energetic pursuit of discovery," and waiting seven months—until "the eleventh hour, with trial imminent"—to seek enforcement of an arbitration agreement. 67 F.3d at 26.

For similar reasons State Farm's heavy reliance on *Doyle* works to its detriment here. In *Doyle*, the Second Circuit ruled that

UBS's "decision to first seek full and final resolution of the claims against [it] in federal court is inconsistent with the right to arbitrate those same claims." 144 F.4th. at 132. UBS "moved to dismiss all claims against [it] – without any mention of the possible availability of arbitration. By doing so, [it] intentionally availed [itself] of the District Court's authority and sought affirmative, dispositive relief." Additionally, UBS "sought to proceed in another venue – arbitration – only after their motion to dismiss was denied." *Id.* at 131.

Here, there has been no significant motion practice in either the federal or state cases. Unlike UBS in *Doyle*, the parties here do not allege that the state court actions include any motions to dismiss or summary judgment, substantial discovery, or trial. *See id.* at 131. Accordingly, the conduct undertaken here is not substantial enough under *Doyle, Kramer,* or *Leadertex* to find that arbitration has been waived. *See id.*; *Kramer*, 943 F.2d at 180; *Leadertex*, 67 F.3d at 26.

3. Further litigation would also not waive arbitration.

Even if there had been substantial litigation of the collection suits, "only prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver." *Weiss v. American Express National Bank*, No. 19-CV-4720 (JPO), 2020 WL 6807628, at *1-2 (S.D.N.Y. Nov. 18, 2020) (quoting *Distajo*, 107 F.3d at 132).

Although the parties did not submit the state court pleadings, the scope of No-Fault collection actions is limited. *Gov't Emps. Ins. Co. v. Tolmasov*, 602 F. Supp. 3d 380, 385 (E.D.N.Y. 2022) (describing a plaintiff's summary judgment burden in a no-fault collection action as requiring a showing that plaintiff sent statutory billing forms of overdue benefits); *Viviane Etienne Med. Care, P.C. v. Country-Wide Ins. Co.*, 25 N.Y.3d 498, 511 (2015) (ruling a plaintiff can win summary judgment with "proof of billing and the absence of a timely denial or payment" as sufficient "to obtain

reimbursement"). Several courts have found that parallel collection suits do not waive the right to arbitration. *See Distajo*, 107 F.3d at 133 (characterizing eviction actions that did not waive arbitration as "simple collection proceedings" where the only issues "pertained to whether (and how much) [was owed]"); *see also Weiss*, 2020 WL 6807628, at *1-2 (distinguishing simple collection claims from later litigation involving different statutory and factual issues and declining to find waiver); *cf. Gov't Emps. Ins. Co. v. Elmwood Park Med. Grp., P.C.*, No. 21-CV-617 (FB) (RER), 2022 WL 772737, at *14 (E.D.N.Y. Feb. 23, 2022), *report and recommendation adopted*, No. 1:21-CV-00617 (FB) (RER), 2022 WL 768360 (E.D.N.Y. Mar. 14, 2022) (finding proceedings not parallel when "relief requested in federal court" was "sufficiently distinct from relief sought . . . in state proceedings" when "the state court proceedings are suits for collection, and would not dispose of GEICO's common law fraud and unjust enrichment claims").

Even "some factual overlap between the actions" does not establish that the "factual and legal issues" are identical. *Hyman v. Cummings-Ramone*, No. 24-CV-5920 (MKB), 2025 WL 2549981, at *8 (E.D.N.Y. Sept. 4, 2025) (collecting cases and finding lack of waiver when different suits concerned different conduct and implicated different legal frameworks); *see also Desarrolladora La Ribera v. Anderson*, No. 24-CV-67 (LAK) (BCM), 2024 WL 5186600, at *17 (S.D.N.Y Dec. 20, 2024) (concluding that "[w]hile there is considerable factual overlap between [the plaintiff]'s defamation claims and [the defendant]'s fraud counterclaims, they are not identical either legally or factually, and thus the fact that [the plaintiff] seeks to litigate its own claims does not constitute a waiver of its right to arbitrate the counterclaims").

Here, the state court actions do not constitute waiver. As described, they do not appear to ask for an adjudication of

compliance with verification procedures,[11] the propriety of EUOs, or whether a provider satisfied No-Fault regulatory obligations—issues that lie at the heart of State Farm's declaratory judgment action. State Farm makes no representation to the contrary and only characterizes these lawsuits as "seeking payment of No-Fault bills." (State Farm's Opp'n at 4.) They are like the eviction proceedings in *Distajo* and the collection claims in *Weiss*. Any overlap in the facts between the claims does not compel otherwise, given that they are not identical factual and legal issues. *See Hyman*, 2025 WL 2549981, at *8; *Desarrolladora La Ribera*, 2024 WL 5186600, at *17.

Arbitration here is not a "second bite at the apple" after the failure of other avenues of litigation. *Doyle*, 144 F. 4th at 131. Because State Farm has not shown that Emuna engaged in litigation conduct inconsistent with an existing right to arbitrate, it has not established waiver. *See Morgan*, 596 U.S. at 415. Therefore, Emuna's motion to compel arbitration is granted.

### C. Dismissal is Appropriate

Because Emuna's claims are arbitrable, all that remains is for the court to determine the proper procedural disposition. Emuna seeks dismissal, State Farm opposes it, and neither party has requested a stay. The FAA instructs that the court "shall" stay the action when arbitration is required *and* a party has requested a stay. 9 U.S.C. § 3; *Katz*, 794 F.3d at 345-46.

"A court may dismiss a case in favor of arbitration, however, if no party has requested a stay." *Boustead Sec., LLC v. Leaping Grp. Co.*, 656 F. Supp. 3d 447, 452 (S.D.N.Y. 2023) (citing *Benzemann*, 622 F. App'x at 18 (concluding that the district court did not err by dismissing an action in favor of arbitration because no party requested a stay); *Aleksanian v. Uber Techs. Inc.*, 524 F.

---

[11] (Emuna's Reply at 5 "Emuna has not opted to litigate State Farm's verification claim as part of its collection actions.")

Supp. 3d 251, 264 (S.D.N.Y. 2021), *vacated and remanded on other grounds*, No. 22-CV-0098, 2023 WL 7537627 (2d Cir. Nov. 14, 2023) (same); *DeLisle Sales Grp., LLC v. House of Wu, LLC*, No. 20-CV-819 (MPS), 2020 WL 7699852, at *7 (D. Conn. Dec. 28, 2020) (same).

As neither party requested a stay, the court dismisses the action.

## V. CONCLUSION

State Farm initiated this action seeking a judicial determination that Emuna's claims are non-compensable based on alleged non-compliance with verification requests. But that question is one the legislature has assigned to arbitration under Section 5106(b). Thus, the court may not substitute its judgment to determine the arbitral forum mandated by statute. Emuna's prior state court suits do not alter that conclusion. Those actions were limited in their actual litigation, as well as cabined to routine collection matters that failed to address the verification issues at the center of this dispute.

Because the claims presented here fall squarely within the No-Fault arbitration framework, and because waiver has not been established, this action must proceed to arbitration. Emuna's motion to compel arbitration is therefore GRANTED and this action is DISMISSED WITH PREJUDICE.

SO ORDERED.

Dated:   Brooklyn, New York
         January 29, 2026

                                        s/Nicholas G. Garaufis
                                        ———————————
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge